UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jerrold Daugherty, *on behalf of himself and others similarly situated*, | ) | Case No: 4:23-cv-01728 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Credit Bureau Services Association, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Nature and Stage of this Proceeding**

Jerrold Daugherty filed this class action against Credit Bureau Services Association ("CBSA"), asserting, on behalf of himself and others similarly situated, that CBSA violated the Telephone Consumer Protection Act ("TCPA") by using an artificial or prerecorded voice in connection with non-emergency calls it placed to cellular telephone numbers, absent prior express consent. Following a year-and-a-half of contested litigation, and as a result of arm's-length negotiations, Mr. Daugherty and CBSA reached an agreement to resolve this matter.

**Issues to be Ruled on by this Court**

Whether this Court should grant Mr. Daugherty's unopposed requests that it certify the settlement class; preliminarily approve the settlement as fair, reasonable, and adequate; appoint Mr. Daugherty as the settlement class representative, and Aaron Radbil of Greenwald Davidson Radbil PLLC ("GDR") as class counsel; approve and direct notice of the settlement to potential settlement class members; and set a final fairness hearing.

**Summary of the Settlement**

The settlement resolves this matter on behalf of the following settlement class:

> All persons throughout the United States to whose cellular telephone number Credit Bureau Services Association placed an artificial or prerecorded voice call from December 2, 2019 through [the date this Court preliminarily approves the settlement].

To compensate settlement class members, CBSA will create, within 30 days after this Court preliminarily approves the settlement, a non-reversionary settlement fund in the amount of $850,000. Paid from the settlement fund will be compensation to settlement class members; the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; reasonable attorneys' fees calculated as a percentage of

the settlement fund, subject to this Court's approval; and an incentive award to Mr. Daugherty, subject to this Court's approval.

A third-party claims administrator will mail notice of the settlement directly to potential settlement class members, together will a detachable claim form that settlement class members can use to submit claims. The claims administrator will also establish a dedicated settlement website that provides information about the settlement, and through which settlement class members can submit claims electronically. As well, the claims administrator will set up a toll-free number that provides information about the settlement.

Each settlement class member who submits an approved claim will be entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval; and an incentive award to Mr. Daugherty, subject to this Court's approval.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Mr. Daugherty and each non-excluded settlement class member will release and forever discharge claims they have against CBSA under the TCPA involving the use of an artificial or prerecorded voice in connection with calls to cellular telephone numbers.

The parties' settlement agreement is attached as Exhibit A.

**The TCPA**

The TCPA prohibits, absent prior express consent, calls made using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) ("The statute separately prohibits calls using 'an artificial or prerecorded voice'. . . . Our decision today does not affect that prohibition.").

"[E]xpress prior consent is an affirmative defense on which the [defendant] bears the burden." *Bennett v. Veterans Aid Pac, Inc.*, No. 4:21-CV-340, 2022 WL 1632553, at *3 (E.D. Tex. May 23, 2022); *see also Breda v. Cellco P'ship*, 934 F.3d 1, 5 (1st Cir. 2019) ("we understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim").

Relatedly, "intent to call a customer who had consented to its calls does not exempt [a TCPA defendant] from liability under the TCPA when it calls someone else who did not consent." *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (agreeing with the Eleventh, Seventh, and Third Circuits).

As well, a TCPA plaintiff's receipt of a single call satisfies Article III standing requirements. *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (finding Article III standing requirements satisfied by receipt of a single text message); *see also Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 563 (S.D. Tex. 2021) (Eskridge, J.) ("If a single, unwanted text message gives rise to a concrete injury, multiple unwanted phone calls with prerecorded messages surely do as well.").

**Summary of Relevant Facts**

Mr. Daugherty is, and has been since at least 2018, the regular and sole user of his cellular telephone number. On eleven occasions—July 11, 2019, November 21, 2019, January 29, 2020,

March 12, 2020, June 2, 2020, July 22, 2020, April 6, 2021, May 25, 2021, July 8, 2021, July 6, 2021, and August 19, 2021—CBSA placed calls to Mr. Daugherty's cellular telephone number in connection with which it used an artificial or prerecorded voice.

At no point did Mr. Daugherty have any business relationship with CBSA. Mr. Daugherty did not provide his cellular telephone number to CBSA; rather, CBSA obtained Mr. Daugherty's cellular telephone number by way of skip tracing efforts. And Mr. Daugherty did not give CBSA prior express consent to deliver prerecorded voice messages to his cellular telephone number.

Mr. Daugherty, as it turns out, is not alone. Indeed, the parties estimate that since December 2, 2019, CBSA placed calls in connection with which it used an artificial or prerecorded voice to approximately 91,709 cellular telephone numbers. Significant, then, is Mr. Daugherty's position that for telephone numbers CBSA obtains from its clients—the primary manner in which CBSA obtains telephone numbers to which it places calls—CBSA is not in possession of material it could use to prove that it had consent to place artificial or prerecorded voice calls to them. Similarly, Mr. Daugherty contends CBSA does not have consent to place prerecorded or artificial voice calls to telephone numbers that it obtains by way of skip tracing efforts—the secondary manner in which CBSA obtains telephone numbers to which it places calls. And for telephone numbers CBSA obtains from consumers—the third, and final manner in which CBSA obtains telephone numbers to which it places calls—there remains a dispute about whether CBSA has consent to place prerecorded or artificial voice calls to them.

## Argument

### I.    The settlement class meets all requirements for certification under Rule 23.

#### A.  TCPA claims are well suited for class treatment.

"Class certification is normal in litigation under [the TCPA], be cause the main questions

. . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

### B.  The settlement class satisfies the requirements of Rule 23(a).

For the settlement class to be certified, it must first satisfy all requirements under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

#### 1.  The settlement class is so numerous that joinder of all members is impracticable.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Any class consisting of more than forty members should raise a presumption that joinder is impracticable." 1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that the numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members).

Here, the parties estimate that the settlement class includes approximately 91,709 members. It is therefore sufficiently numerous that joinder is impracticable. *See Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 10464, at *1 (E.D. La. Jan. 2, 2002) (the numerosity requirement is satisfied with an estimated class size of at least 200 members); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("Numbering at least eighty and

potentially numbering in the hundreds, this class is clearly so numerous that joinder of all members would be impracticable.").

### 2. Common questions exist as to each settlement class member.

"Commonality and typicality are not demanding tests." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 555 (S.D. Tex. 2005) (Harmon, J.); *see also Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("The Fifth Circuit has held that the threshold of commonality is not a high one."). "For the former, the putative class members need not have identical interests or claims, but only at least one issue, the resolution of which would affect all or a substantial number of class members." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. at 555; *see also In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) ("To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."). Moreover, the commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).

This case presents a host of common questions. For example, whether CBSA used a prerecorded voice in connection with the calls at issue is a question common to settlement class members. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."); *see also Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *4 (E.D. Cal. July 6, 2020) ("Here, the case presents the common legal issue of whether Defendant used . . . [a] prerecorded voice message to make unsolicited calls regarding a purported debt. This issue is

common to all putative class members and thus, the commonality requirement is met."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) ("Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a 'prerecorded voice' prohibited by the TCPA[.]"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Those who are members of one of the proposed classes by definition received the same calls . . . made by . . . using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question."); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using a[] . . . prerecorded or artificial voice"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding as questions "common to the class . . . (2) whether [the defendant's] dialer delivers pre-recorded messages").

Additionally, that each member of the settlement class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Knapper*, 329 F.R.D. at 242 ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied."); *see also Lavigne v. First Community Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457, at *4 (D.N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: . . . . • whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least

one phone call or text message from Chase to her cell phone."); *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls . . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question[.]").

### 3. Mr. Daugherty's claims are typical of the claims of settlement class members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Walton*, 190 F.R.D. at 409. "The test of typicality, like that of commonality, is not demanding." *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263, 270 (S.D. Tex. 2007) (Gilmore, J.).

Here, CBSA placed artificial or prerecorded voice calls to Mr. Daugherty's cellular telephone number, and the cellular telephone numbers of each settlement class member. Mr. Daugherty's claims are therefore typical of the claims of settlement class members. *See Cortes*, 2020 WL 3642373, at *5 ("Here, Plaintiff asserts the same claims that could be brought by any of the other class members, specifically that Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls regarding a purported debt. Therefore, the typicality requirement is satisfied."); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (finding typicality in a TCPA matter where the named plaintiff received the same communication as did members of the class); *accord Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("[T]he proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim.");

*Cabrera,* 2014 WL 11894430, at *4 ("The Court finds that Plaintiff's claims are typical of the proposed cellular-only class because his claims arise from the same practice—[the defendant's] use of LiveVox to place calls to cellular numbers—and are premised on the same TCPA violation.").

### 4. Mr. Daugherty and GDR will fairly and adequately protect the interests of settlement class members.

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to uncover conflicts of interest between named parties and the class they seek to represent." *Chavez v. Plan Benefit Servs., Inc.*, No. AU-17-CA-00659-SS, 2019 WL 4254627, at *3 (W.D. Tex. Aug. 30, 2019). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, Mr. Daugherty is capable of protecting, has protected, and will continue to protect, the interests of settlement class members. *See* Declaration of Jerrold Daugherty, attached as Exhibit B, ¶ 7. From the outset, Mr. Daugherty has been, and remains, involved in this matter. *Id.* at ¶ 8. He has, and will continue to, communicate regularly with GDR. *Id.* at ¶ 11. And he is prepared to make all necessary decisions involving this case with settlement class members' best interests in mind. *Id.* at ¶ 9.

As well, Mr. Daugherty retained counsel experienced and competent in class action litigation, including that under the TCPA. *See* Declaration of Aaron Radbil, attached as Exhibit C, ¶¶ 9-10. Indeed, courts have not only appointed GDR as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight the firm's wealth of experience and skill. *Id.* at ¶ 11-22.

**C.  The settlement class satisfies the requirements of Rule 23(b).**

After satisfying all requirements under Rule 23(a), the settlement class, here, must then

satisfy elements of Rule 23(b), commonly referred to as predominance and superiority.

**1.  Questions common to settlement class members predominate over any questions affecting only individual members.**

Rule 23(b)(3) requires that "the questions of law or fact common to class members

predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3);

*Mullen*, 186 F.3d at 624. "Predominance does not[,] [however], require all questions of law and

fact to be common, but only that the common question(s) predominate over individual questions.

*Angell v. GEICO Advantage Ins. Co.*, 573 F. Supp. 3d 1151, 1160 (S.D. Tex. 2021) (Ellison,

J.), *aff'd,* 67 F.4th 727 (5th Cir. 2023). "The Rule 23(b)(3) predominance inquiry tests whether

proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

*Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry turns on "how a trial on the merits

would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318,

326 (5th Cir. 2008).

Relevant, then, is that "Section 227(b)(1)(A) of the TCPA prohibits calling 'any telephone

number assigned to a . . . cellular telephone service' using 'any automatic telephone dialing system'

absent 'prior express consent of the called party.'" *Callier v. GreenSky, Inc.*, No. EP-20-CV-

00304-KC, 2021 WL 2688622, at *5 (W.D. Tex. May 10, 2021) (*quoting* 47 U.S.C. §

227(b)(1)(A)). Accordingly, a question common to settlement class members that predominates is

whether CBSA used an artificial or prerecorded voice in connection with calls it placed to

settlement class members. *See Cortes*, 2020 WL 3642373, at *5 ("[T[he predominant issue

common to all class members is whether Defendant used an . . . artificial or prerecorded voice

message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual

questions are predominated by the common question of Defendant's general TCPA liability."); *see also Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions listed above [including whether the defendant placed prerecorded or automated calls and alerts to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues"); *accord Mohamed v. Am. Motor Co., LLC,* 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("whether [a defendant] used an automated telephonic dialing system to [place the subject calls] and caused injuries to the class members is an issue that predominates over those that may be considered individualized"); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 (explaining that "[t]he facts necessary to establish liability [under the TCPA] relate to Defendant's common course of conduct and the transmissions of the [communications]," and finding that "common issues predominate over any individual issues that may arise"); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members.").

## 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against

members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. *Id*.

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper*, 329 F.R.D. at 247 ("The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *see also Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). Here, the superiority of a class action is particularly compelling given that the settlement class includes tens of thousands of members.

As well, no one settlement class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the settlement class are identical, as they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James*, 2016 WL 6908118, at *1 ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action."); *see also Lavigne*, 2018 WL 2694457, at *8 ("Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the]

wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits—or even a fraction of that.").

Furthermore, absent a class action, thousands of claims like Mr. Daugherty's—all of which stem from CBSA' identical conduct—would likely go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

A class action is therefore the superior method to adjudicate all aspects of this controversy. *See Luther v. Convergent Outsourcing, Inc.*, No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under the FDCPA and TCPA.").

II.     **The settlement is fair, reasonable, and adequate, under Rule 23(e).**

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice of the class action settlement has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; Newberg, § 11.25.

Considering as much, preliminary approval requires only that a court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* Manual For Complex Litigation § 21.632-33.

No matter, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Fifth Circuit identified six factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery

14

completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

### A.  There is no fraud or collusion behind the settlement.

The parties agreed to settle this matter only after four months of active negotiation, and a year-and-a-half of contested litigation. *See* Exhibit C, ¶ 44. The settlement, therefore, is not the product of collusion, but rather the ultimate result of arms'-length negotiations. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.").

### B.  The complexity, expense, and likely duration of litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re*

*Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, absent settlement, the parties would have had to continue with discovery, including multiple depositions; brief both class certification and merit-related issues; and try any issues not resolved on summary judgment. Appeals would almost certainly have followed.

The settlement, however, provides immediate relief, and avoids the certainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson*, 2002 WL 31415728, at *3 (following discovery, "several fundamental issues in the case remained in dispute: . . . . Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### C.  The stage of the proceedings supports preliminary approval of the settlement.

Mr. Daugherty filed his class action against CBSA on May 10, 2023. *See* ECF No. 1. The parties then engaged in nearly a year of active discovery, during which CBSA produced thousands of pages of relevant material. *See* Exhibit C, ¶ 45. As well, Mr. Daugherty engaged two separate experts to assist with data analysis and potential notice to class members should this Court have certified a class over CBSA's objection. *See id.*, ¶ 46.

All of this, together, ensured that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 300 F.R.D. at 303-304. The parties then consummated the settlement having a clear view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense

and duration of the litigation.").

**D. The probability of Mr. Daugherty's success on the merits, the range of possible recovery, and the uncertainty of damages favor preliminary approval.**

Courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. And "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015) (preliminarily approving class action settlement).

Here, Mr. Daugherty faced a number of significant merit-based hurdles. For example, CBSA contended that it could reasonably rely on consent it suggested it had to place certain of the artificial or prerecorded voice calls at issue, to avoid liability under the TCPA. CBSA also stated that it maintained robust safeguards to ensure compliance with the TCPA. As well, CBSA made clear that it would vigorously oppose certification of Mr. Daugherty's then-proposed class.

Additionally, and likely more important, CBSA is a very small debt collector that employs less than a handful of collectors. And its only applicable insurance policy, which is eroding, limits TCPA class action liability coverage to $1,000,000. So after a year-and-a-half of contested litigation, the $850,000 settlement fund likely amounts to something very close to a real world maximum recovery for settlement class members.

And notwithstanding, the settlement—which breaks down to about $9.27 per potential settlement class member ($850,000 / 91,709 = $9.27)—compares favorably with analogous settlements under the TCPA, all of which various district courts approved. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs.,*

*Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

As well, the settlement is expected to meet or exceed, on a per-claimant recovery basis, other recently approved TCPA class action settlements. Indeed, GDR estimates—based on historical claims rates—that after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Mr. Daugherty, participating settlement class members who submit approved claims will receive between $35 and $85 each. This is on par with comparable figures in other approved TCPA class settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL

1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation. *Accord Jenkins*, 300 F.R.D. at 303 ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

**E.  The opinion of GDR further supports preliminary approval of the settlement.**

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be

accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F.
Supp. 2d 632, 649 (N.D. Tex. 2010); *see also Henderson*, 2002 WL 31415728, at *4 ("Finally, the
Court finds that the opinions of class counsel, class representatives, and absent class members
weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement
is fair."); *accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors
all pointed substantially in favor of this settlement as presently structured, this Court is certain that
they would not have signed their names to the settlement agreement.").

Here, GDR is highly experienced in class action litigation, particularly in cases under the
TCPA. *See* Exhibit C, ¶¶ 9-10. And GDR firmly believes that the settlement is fair, reasonable,
adequate, and in the best interests of class members. *See id*. at ¶ 43.

### F.  Mr. Daugherty and GDR and have adequately represented the settlement class.

Mr. Daugherty was, throughout this matter, committed to acting in the best interests of
class members he sought to represent. He stayed updated on the case and spoke with GDR
regularly. Mr. Daugherty also remained prepared to, and did, make all necessary decisions required
of him in the best interests of class members. Similarly, GDR—who is experienced in complex
litigation and has served as class counsel on numerous occasions—compellingly litigated on behalf
of Mr. Daugherty and settlement class members, and against sophisticated and experienced
defense counsel. And in the end, with GDR's guidance, Mr. Daugherty obtained an excellent
recovery for both himself and settlement class members.

### G.  The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class
members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that
courts should consider "whether the apportionment of relief among class members takes

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all settlement class members have the same claims. And the settlement provides that each participating class member will receive an equal portion of the settlement fund. Additionally, the release affects each class member in the same way.

## III.    The robust notice plan is more than sufficient.

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties propose a robust notice program to be administered by a well-respected third-party claims administrator, Verita Global, LLC ("Verita"). Through the notice program, Verita will use all reasonable efforts to provide direct mail notice to settlement class members.

To start, Verita will identify and verify contact information for persons associated with the telephone numbers to which CBSA delivered the artificial or prerecorded voice calls at issue. In doing so, Verita will run information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Verita will then send each person identified through this process, via U.S. mail, a postcard notice with a detachable claim form.

Separately, Verita will establish a dedicated settlement website, through which class members can review relevant documents filed with this Court, review the summary question-and-answer notice of class action settlement, and submit claims. In addition, Verita will establish a toll-

free telephone number, through which class members can request additional information, have questions about the settlement answered.

To submit a valid claim, a class member will have to state that CBSA placed one or more artificial or prerecorded voice calls to his or her cellular telephone between December 2, 2019 and the date this Court preliminarily approves the settlement, and that he or she wishes to participate in the settlement.

The ultimate goal of the notice program will be to make it as convenient as possible for deserving settlement class members to learn of, and participate in, the settlement. *See Bonoan v. Adobe, Inc*., No. 3:19-cv-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (preliminarily approving a TCPA class action settlement, and approving a very similar notice plan); *Williams*, 2019 WL 1450090, at *5 (approving a similar notice plan in a TCPA class action); *James*, 2016 WL 6908118, at *2 (same).

The notice program, therefore, complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5) information regarding Mr. Daugherty's incentive award, and GDR's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); Manual For Complex Litigation § 21.312.

In short, the notice program ensures that class members' due process rights are amply

protected. *See* Fed. R. Civ. P. 23(c)(2)(A).

## IV.   This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Here, the parties respectfully request that this Court set a date for a final fairness hearing, at this Court's convenience, approximately four months after (and at least 105 days after) it preliminarily approves the settlement.

### Conclusion

Mr. Daugherty respectfully requests that this Court enter the accompanying order—agreed to by the parties—certifying the settlement class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Mr. Daugherty as the settlement class representative, and Aaron Radbil of GDR as class counsel; approving and directing notice of the settlement to settlement class members; and setting a final fairness hearing date.

### Certificate of Conference

Mr. Daugherty conferred with CBSA regarding the relief he seeks by way this motion, and CBSA does not oppose the relief Mr. Daugherty seeks by way of this motion.

Dated: September 27, 2024      Respectfully submitted,

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
(561) 826-5477
aradbil@gdrlawfirm.com