United States District Court
Southern District of Texas
**ENTERED**
February 25, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jerrold Daugherty, *on behalf of himself and others similarly situated*, | ) ) ) | Case No: 4:23-cv-01728 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| Credit Bureau Services Association, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

This Court is advised that the parties to this action, Jerrold Daugherty ("Plaintiff") and Credit Bureau Services Association ("Defendant"), through their respective counsel, have agreed, subject to this Court's approval and following notice to the settlement class members and a hearing, to settle the above-captioned lawsuit ("Lawsuit") upon the terms and conditions set forth in the parties' class action settlement agreement ("Agreement"), which Plaintiff filed with this Court:

Based on the Agreement and all of the files, records, and proceedings in this matter, and upon preliminary examination, the proposed settlement appears fair, reasonable, and adequate, and a hearing should and will be held on **June 6, 2025 at 10:00 am**, after notice to the settlement class members, to confirm that the settlement is fair, reasonable, and adequate, and to determine whether a final order and judgment should be entered in this Lawsuit:

IT IS HEREBY ORDERED:

This Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties.

In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453,

1

and 1711-1715, Defendant will cause to be served written notice of the class settlement on the United States Attorney General and the Attorneys General of each state in which any settlement class member resides.

This Court preliminarily certifies this case as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the following settlement class:

> All persons throughout the United States to whose cellular telephone number Credit Bureau Services Association placed an artificial or prerecorded voice call from December 2, 2019 through **February 11, 2025**.

This Court appoints Plaintiff as the representative for the settlement class, and appoints Aaron D. Radbil of Greenwald Davidson Radbil PLLC ("GDR") as class counsel for the settlement class.

This Court preliminarily finds, for settlement purposes, that this action satisfies the applicable prerequisites for class action treatment under Rule 23, namely:

A. The settlement class is so numerous that joinder of all members is impracticable:

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Any class consisting of more than forty members should raise a presumption that joinder is impracticable." 1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."); *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that the numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members).

Here, the parties estimate that the settlement class includes approximately 91,709

members. It is therefore sufficiently numerous that joinder is impracticable. *See Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 10464, at *1 (E.D. La. Jan. 2, 2002) (the numerosity requirement is satisfied with an estimated class size of at least 200 members); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("Numbering at least eighty and potentially numbering in the hundreds, this class is clearly so numerous that joinder of all members would be impracticable.");

    B.    Common questions exist as to each settlement class member:

"Commonality and typicality are not demanding tests." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 555 (S.D. Tex. 2005) (Harmon, J.); *see also Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("The Fifth Circuit has held that the threshold of commonality is not a high one."). "For the former, the putative class members need not have identical interests or claims, but only at least one issue, the resolution of which would affect all or a substantial number of class members." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. at 555; *see also In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) ("To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."). Moreover, the commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).

This case presents a host of common questions. For example, whether Defendant used a prerecorded voice in connection with the calls at issue is a question common to settlement class members. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would

3

produce an answer that is central to the validity of each claim in one stroke."); *see also Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *4 (E.D. Cal. July 6, 2020) ("Here, the case presents the common legal issue of whether Defendant used . . . [a] prerecorded voice message to make unsolicited calls regarding a purported debt. This issue is common to all putative class members and thus, the commonality requirement is met."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) ("Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a 'prerecorded voice' prohibited by the TCPA[.]"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Those who are members of one of the proposed classes by definition received the same calls . . . made by . . . using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question."); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using a[] . . . prerecorded or artificial voice"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding as questions "common to the class . . . (2) whether [the defendant's] dialer delivers pre-recorded messages").

Additionally, that each member of the settlement class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Knapper*, 329 F.R.D. at 242 ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied."); *see also Lavigne v. First Community Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF,

2018 WL 2694457, at *4 (D.N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: . . . . • whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls . . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question[.]");

      C.     Plaintiff's claims are typical of the claims of the settlement class members:

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Walton*, 190 F.R.D. at 409. "The test of typicality, like that of commonality, is not demanding." *In re Seitel, Inc. Sec. Litig.*, 245 F.R.D. 263, 270 (S.D. Tex. 2007) (Gilmore, J.).

Here, Defendant placed artificial or prerecorded voice calls to Plaintiff's cellular telephone number, and the cellular telephone numbers of each settlement class member. Plaintiff's claims are therefore typical of the claims of settlement class members. *See Cortes*, 2020 WL 3642373, at *5 ("Here, Plaintiff asserts the same claims that could be brought by any of the other class members, specifically that Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls regarding a purported debt. Therefore, the typicality requirement is satisfied."); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (finding typicality in a TCPA matter where the named plaintiff received the same communication as did members of the

class); *accord Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("[T]he proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *Cabrera,* 2014 WL 11894430, at *4 ("The Court finds that Plaintiff's claims are typical of the proposed cellular-only class because his claims arise from the same practice—[the defendant's] use of LiveVox to place calls to cellular numbers—and are premised on the same TCPA violation.");

D. Plaintiff and class counsel will fairly and adequately protect the interests of all of settlement class members:

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to uncover conflicts of interest between named parties and the class they seek to represent." *Chavez v. Plan Benefit Servs., Inc.*, No. AU-17-CA-00659-SS, 2019 WL 4254627, at *3 (W.D. Tex. Aug. 30, 2019). "While the burden in a class certification motion is on the Plaintiffs, the adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Here, Plaintiff is capable of protecting, has protected, and states he will continue to protect, the interests of settlement class members. From the outset, Plaintiff has been, and remains, involved in this matter. He has, and states he will continue to, communicate regularly with his counsel, Aaron Radbil of GDR. And he states he is prepared to make all necessary decisions involving this case with settlement class members' best interests in mind.

As well, Plaintiff retained counsel—Mr. Radbil and GDR—experienced and competent in class action litigation, including that under the TCPA. Indeed, courts have appointed Mr. Radbil

and GDR as class counsel in dozens of consumer protection class actions in the past few years alone, and many have also taken care to highlight Mr. Radbil's and the firm's wealth of experience and skill;

  E. Questions common to settlement class members predominate over any questions affecting only individual members.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Mullen*, 186 F.3d at 624. "Predominance does not[,] [however], require all questions of law and fact to be common, but only that the common question(s) predominate over individual questions. *Angell v. GEICO Advantage Ins. Co.*, 573 F. Supp. 3d 1151, 1160 (S.D. Tex. 2021) (Ellison, J.), *aff'd*, 67 F.4th 727 (5th Cir. 2023). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry turns on "how a trial on the merits would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008).

Relevant, then, is that "Section 227(b)(1)(A) of the TCPA prohibits calling 'any telephone number assigned to a . . . cellular telephone service' using 'any automatic telephone dialing system' absent 'prior express consent of the called party.'" *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5 (W.D. Tex. May 10, 2021). Accordingly, a question common to settlement class members that predominates is whether Defendant used an artificial or prerecorded voice in connection with calls it placed to settlement class members. *See Cortes*, 2020 WL 3642373, at *5 ("[T[he predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the

7

TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability."); *see also Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions listed above [including whether the defendant placed prerecorded or automated calls and alerts to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues"); *accord Mohamed v. Am. Motor Co., LLC,* 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("whether [a defendant] used an automated telephonic dialing system to [place the subject calls] and caused injuries to the class members is an issue that predominates over those that may be considered individualized"); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA)."); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 (explaining that "[t]he facts necessary to establish liability [under the TCPA] relate to Defendant's common course of conduct and the transmissions of the [communications]," and finding that "common issues predominate over any individual issues that may arise"); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members.").

F.     A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider the interest of

members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. *Id.*

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper*, 329 F.R.D. at 247 ("The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *see also Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). Here, the superiority of a class action is particularly compelling given that the settlement class includes tens-of-thousands of members.

As well, no one settlement class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the settlement class are identical, as they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James*, 2016 WL 6908118, at *1 ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his

9

action."); *see also Lavigne*, 2018 WL 2694457, at *8 ("Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits—or even a fraction of that.").

Furthermore, absent a class action, thousands of claims like Plaintiff's—all of which stem from Defendant's identical conduct—would likely go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

A class action is therefore the superior method to adjudicate all aspects of this controversy. *See Luther v. Convergent Outsourcing, Inc.*, No. 15-10902, 2016 WL 1698396, at *6 (E.D. Mich. Apr. 28, 2016) ("Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of

adjudicating the plaintiffs' claims under the FDCPA and TCPA.").

This Court also preliminarily finds that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members, when considering, in their totality, the following factors: the lack of fraud or collusion behind the settlement; the complexity, expense, and likely duration of the litigation; the stage of the proceedings and the amount of discovery completed; the probability of Plaintiff's success on the merits; Defendant's defenses; the range of possible recovery; and the opinions of class counsel. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

This Court also considered the following factors in preliminarily finding that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members:

(A)  whether Plaintiff and class counsel have adequately represented the class;

(B)  whether the proposal was negotiated at arm's length;

(C)  whether the relief provided for the class is adequate, taking into account:

  (i)  the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  whether the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

A third-party settlement administrator—Verita Global, LLC ("Verita")—will administer the settlement and distribute notice of the settlement to the settlement class members. Verita will be responsible for mailing the approved class action notices and settlement checks to the settlement class members. All reasonable costs of notice and administration will be paid from the $850,000 common settlement fund.

This Court approves the form and substance of the proposed notice of the class action settlement, which includes the postcard notice, the detachable claim form, and the question-and-answer notice to appear on the dedicated settlement website.

The proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice. *See* Fed. R. Civ. P. 23(c)(2)(B); Manual For Complex Litigation § 21.312; *see also Bonoan v. Adobe, Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website."); *see, e.g. Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL, ECF No. 120 (D. Ariz. Jul. 12, 2019) (approving the form and substance of materially similar postcard notice, postcard claim form, and question-and-answer notice, and finding that the proposed form and method for notifying settlement class members of the settlement and its terms and conditions met the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient

notice to all persons and entities entitled to the notice); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (same); *James*, 2016 WL 6908118, at *2 (same).

This Court additionally finds that the proposed notice is clearly designed to advise the settlement class members of their rights.

In accordance with the Agreement, the settlement administrator will mail the notice to the settlement class members as expeditiously as possible, but in no event later than 30 days after this Court's entry of this order, *i.e.*, **March 13, 2025**.

Any settlement class member who desires to be excluded from the settlement must send a written request for exclusion to the settlement administrator with a postmark date no later than 75 days after this Court's entry of this order, *i.e.*, no later than **April 28, 2025**. To be effective, the written request for exclusion must state the settlement class member's full name, address, telephone number called by Defendant demonstrating membership in the settlement class, and a clear and unambiguous statement demonstrating a wish to be excluded from the settlement, such as "I request to be excluded from the settlement in the *Daugherty v. Credit Bureau Services Association* action." A settlement class member who requests to be excluded from the settlement must sign the request personally, or, if any person signs on the settlement class member's behalf, that person must attach a copy of the power of attorney authorizing that signature.

Any settlement class member who submits a valid and timely request for exclusion will not be bound by the terms of the Agreement. Any settlement class member who fails to submit a valid and timely request for exclusion will be considered a settlement class member and will be bound by the terms of the Agreement.

Any settlement class member who intends to object to the fairness of the proposed

settlement must file a written objection with this Court within 75 days after this Court's entry of this order, *i.e.*, no later than **April 28, 2025**. Further, any such settlement class member must, within the same time period, provide a copy of the written objection to:

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road
Suite 500
Boca Raton, FL 33431

Andrew M. Scott
Gordon Rees Scully Mansukhani, LLP
1900 West Loop South, Suite 1000
Houston, TX 77027

United States District Court for the Southern District of Texas
515 Rusk Street
Houston, TX 77002

To be effective, a notice of intent to object to the settlement must include the settlement class member's:

    a.    Full name;

    b.    Address;

    c.    Telephone number to which Defendant placed an artificial or prerecorded voice call from December 2, 2019 through **February 11, 2025**, to demonstrate that the objector is a member of the settlement class;

    d.    A statement of the objection;

    e.    A description of the facts underlying the objection;

    f.    A description of the legal authorities that support each objection;

    g.    A statement noting whether the objector intends to appear at the Fairness Hearing;

    h.    A list of all witnesses that the objector intends to call by live testimony, deposition testimony, or affidavit or declaration testimony;

    i. A list of exhibits that the objector intends to present at the Fairness Hearing; and

    j. A signature from the settlement class member.

Any settlement class member who has timely filed an objection may appear at the final approval hearing, in person or by counsel, to be heard to the extent allowed by this Court, applying applicable law, in opposition to the fairness, reasonableness and adequacy of the proposed settlement, and on the application for an award of attorneys' fees, costs, and litigation expenses

Any objection that includes a request for exclusion will be treated as an exclusion and not an objection. And any settlement class member who submits both an exclusion and an objection will be treated as having excluded himself or herself from the settlement, and will have no standing to object.

If this Court grants final approval of the settlement, the settlement administrator will mail a settlement check to each settlement class member who submits a valid, timely claim.

This Court will conduct a final fairness hearing on **June 6, 2025 at 10:00 am** at the United States District Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002, to determine:

  A. Whether this action satisfies the applicable prerequisites for class action treatment for settlement purposes under Rule 23;

  B. Whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members and should be approved by this Court;

  C. Whether a final order and judgment, as provided under the Agreement, should be entered, dismissing the Lawsuit with prejudice and releasing the released claims against the released parties; and

D.  To discuss and review other issues as this Court deems appropriate.

Attendance by settlement class members at the final fairness hearing is not necessary. Settlement class members need not appear at the hearing or take any other action to indicate their approval of the proposed class action settlement. Settlement class members wishing to be heard are, however, required to appear at the final fairness hearing. The final fairness hearing may be postponed, adjourned, transferred, or continued without further notice to the class members.

Memoranda in support of the proposed settlement must be filed with this Court no later than thirty days before the final fairness hearing *i.e.*, no later **May 7, 2025**. Opposition briefs to any of the foregoing must be filed no later than fourteen days before the final fairness hearing, *i.e.*, no later than **May 23, 2025**. Reply memoranda in support of the foregoing must be filed with this Court no later than seven days before the final fairness hearing, *i.e.*, no later than **May 30, 2025**.

Memoranda in support of any petitions for attorneys' fees and reimbursement of costs and litigation expenses by class counsel, or in support of an incentive award, must be filed with this Court no later than thirty-five days before the deadline for settlement class members to object to, or exclude themselves from, the settlement (forty days after this Court's entry of this Order), *i.e.*, no later than **March 24, 2025**. Opposition briefs to any of the foregoing must be filed no later than seventy-five days after entry of this Order, *i.e.*, no later than **April 28, 2025**. Reply memoranda in support of the foregoing must be filed with this Court no later than fourteen days after the deadline for settlement class members to object to, or exclude themselves from, the settlement, *i.e.*, no later than **May 12, 2025**.

The Agreement and this order will be null and void if any of the parties terminates the Agreement per its terms. Certain events described in the Agreement, however, provide grounds for terminating the Agreement only after the parties have attempted and completed good faith

negotiations to salvage the settlement but were unable to do so.

If the Agreement or this order are voided, then the Agreement will be of no force and effect and the parties' rights and defenses will be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this order never entered.

This Court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and enforcement of the Agreement.

This Court sets the following schedule:

| | |
|---|---|
| **February 11, 2025:** | Order Preliminarily Approving the Settlement Entered |
| **March 13, 2025:** | Defendant to fund Settlement Fund (thirty days after entry of Order Preliminarily Approving the Settlement) |
| **March 13, 2025:** | Notice Sent (thirty days after entry of Order Preliminarily Approving the Settlement) |
| **March 24, 2025:** | Attorneys' Fees Petition Filed (forty days after entry of Order Preliminarily Approving the Settlement) |
| **April 28, 2025:** | Opposition to Attorneys' Fees Petition (seventy-five days after entry of Order Preliminarily Approving the Settlement) |
| **April 28, 2025:** | Deadline to Submit Claims, Send Exclusion, or File Objection (seventy-five days after entry of Order Preliminarily Approving the Settlement) |
| **May 12, 2025:** | Reply in Support of Attorneys' Fees Petition (fourteen days after the deadline for settlement class members to submit claims, object to, or exclude themselves from, the settlement) |
| **May 7, 2025:** | Motion for Final Approval Filed (thirty days before final fairness hearing) |
| **May 23, 2025:** | Opposition to Motion for Final Approval Filed (fourteen days before final fairness hearing) |
| **May 30, 2025:** | Reply in support of Motion for Final Approval (seven days before final fairness hearing) |

**May 27, 2025**: Class Administrator will provide a sworn declaration attesting to proper service of the Class Notice and Claim Forms, and state the number of claims, objections, and opt outs, if any (ten days prior to Final Fairness Hearing)

**June 6, 2025 at 10:00 am**: Final Fairness Hearing

IT IS SO ORDERED.

Dated: February 24, 2025.

Kenneth M. Hoyt
United States District Judge