UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Jerrold Daugherty, *on behalf of himself and others similarly situated*, | ) Case No: 4:23-cv-01728 |
| Plaintiff, | ) |
| v. | ) |
| Credit Bureau Services Association, | ) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## Introduction

Jerrold Daugherty ("Plaintiff"), together with Credit Bureau Services Association ("Defendant"), agreed to resolve this matter for the benefit of a nationwide class. Specifically, the parties agreed that Defendant would create a non-reversionary settlement fund in the amount of $850,000 to compensate settlement class members for claims under the Telephone Consumer Protection Act ("TCPA"). This Court preliminarily approved the parties' settlement on February 11, 2025. And the court-appointed claims administrator—Verita Global, LLC ("Verita")—disseminated court-approved settlement class notice on March 13, 2025.

After receiving notice of the settlement, 1,886 settlement class members submitted approved claims for their *pro rata* share of the settlement fund. Accordingly, after deducting from the settlement fund all costs of notice and claims administration, attorneys' fees requested, costs and litigation expenses requested, and the incentive award requested, each participating settlement class member will receive approximately $226.

Moreover, no settlement class member excluded himself or herself from the settlement, and no settlement class member objected to the settlement. Considering this, Plaintiff respectfully requests that this Court finally approve the settlement, and enter a final judgment and order.

Defendant does not oppose the relief Plaintiff now requests.

## Summary of the Settlement

The settlement resolves this matter on behalf of the following settlement class:

> All persons throughout the United States to whose cellular telephone number Credit Bureau Services Association placed an artificial or prerecorded voice call from December 2, 2019 through February 11, 2025.

To compensate settlement class members, Defendant created a non-reversionary settlement fund in the amount of $850,000. Paid from the settlement fund will be compensation to settlement

1

class members; the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval; and an incentive award to Plaintiff, subject to this Court's approval.

Verita mailed notice of the settlement directly to potential settlement class members, together with a detachable claim form that settlement class members could use to submit claims. Verita also established a dedicated settlement website that provides information about the settlement, and through which settlement class members were able to submit claims electronically. As well, Verita set up a toll-free number that provides information about the settlement.

Each settlement class member who submitted an approved claim is entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval; and an incentive award to Plaintiff, subject to this Court's approval.

Any settlement class member who wished to exclude himself or herself from the settlement was able to submit a request for exclusion. Likewise, any settlement class member who wished to object to the settlement was able to submit an objection. Of note, no settlement class member requested to be excluded from the settlement. And no settlement class member objected to the settlement.

Upon this Court's entry of a final judgment, Plaintiff and each settlement class member will release and forever discharge claims they have against Defendant under the TCPA involving the use of an artificial or prerecorded voice in connection with calls to cellular telephone numbers.

**Claims Administration**

Verita delivered notice of the settlement to potential settlement class members. The resulting claims, lack of exclusions, and lack of objections, demonstrate not only the effectiveness of the notice, but also settlement class members' satisfaction with the settlement.

*Direct Mail Notice*: Verita caused postcard notices with detachable claim forms to be mailed to potential settlement class members identified by Defendant. *See* Verita Declaration, ¶¶ 5-9, attached as Exhibit A.

*Settlement Website*: Verita established and maintains a dedicated settlement website—www.cbsaclassactionsettlement.com—which includes information pertinent to settlement class members as well as answers to frequently asked questions. *See id.*, ¶ 10. Verita made the settlement website live on March 13, 2025.

*Toll-Free Hotline*: Verita established and maintains a toll-free telephone number—(888) 726-1608—for settlement class members to obtain information about the settlement. *See id.*, ¶ 11. Verita activated the toll-free telephone number on March 13, 2025. *See id.*.

*Claims*: 1,886 settlement class members submitted approved claims. *See id.*, ¶ 12.

*Objections*: 0 settlement class members objected to the settlement. *See id.*, ¶ 14.

*Exclusions*: 0 settlement class members excluded themselves from the settlement. *See id.*, ¶ 13.

*Class Action Fairness Act Notice*: Defendant served the notice required by the class action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to or raised an issue regarding the settlement. *See id.*, ¶¶ 2-4.

# Argument

### I. This Court's preliminary decision to certify the settlement class remains sound.

This Court previously found "that this action satisfied the applicable prerequisites for class action treatment under Rule 23[.]" ECF No. 27 at 2. Nothing has since changed to warrant a departure from this Court's reasoning.

### II. The settlement satisfies all requirements and merits final approval.

The Fifth Circuit identified six factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

#### A. There was no fraud or collusion behind the settlement.

The parties agreed to settle this matter only after four months of active negotiation, and a year-and-a-half of contested litigation. *See* ECF No. 22-3, ¶ 44. The settlement, therefore, is not the product of collusion, but rather the ultimate result of arms'-length negotiations. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar*

4

*Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.").

### B. The complexity, expense, and likely duration of litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, absent settlement, the parties would have had to continue with discovery, including multiple depositions; brief both class certification and merit-related issues; and try any issues not resolved on summary judgment. Appeals would almost certainly have followed.

The settlement, however, provides immediate relief, and avoids the uncertainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson v. Eaton*, No. CIV.A. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Oct. 25, 2002) (following discovery, "several fundamental issues in the case remained in dispute: . . . . Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### C. The stage of the proceedings supports final approval of the settlement.

Plaintiff filed his class action against Defendant on May 10, 2023. *See* ECF No. 1. The

parties then engaged in nearly a year of active discovery, during which Defendant produced thousands of pages of relevant material. *See* ECF No. 22-3, ¶ 45. As well, Plaintiff engaged two separate experts to assist with data analysis and potential notice to class members should this Court have certified a class over Defendant's objection. *See id*., ¶ 46.

All of this, together, ensured that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 300 F.R.D. at 303-304. The parties then consummated the settlement having a clear view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages favor final approval.

Courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. And "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015) (preliminarily approving class action settlement).

Here, Plaintiff faced a number of significant merit-based hurdles. For example, in an effort to avoid liability under the TCPA, Defendant contended that it could reasonably rely on consent it suggested it had to place certain of the artificial or prerecorded voice calls at issue. Defendant also stated that it maintained robust safeguards to ensure compliance with the TCPA. As well, Defendant made clear that it would vigorously oppose certification of Plaintiff's then-proposed class.

Additionally, and likely more important, Defendant is a very small debt collector that employs less than a handful of collectors. And its only applicable insurance policy, which is eroding, limits TCPA class action liability coverage to $1,000,000. So after a year-and-a-half of contested litigation, the $850,000 settlement fund likely amounts to something very close to a real-world maximum recovery for settlement class members.

Notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at

7

\*4 (N.D. Ga. Jan. 30, 2017).

What's more, the settlement provides settlement class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at \*11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money for claims they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation. *Accord Jenkins*, 300 F.R.D. at 303 ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

### E. The opinion of class counsel further supports final approval of the settlement.

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *see also Henderson*, 2002 WL 31415728, at \*4 ("Finally, the Court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement is fair."); *accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors

8

all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Here, Greenwald Davidson Radbil PLLC ("GDR") is highly experienced in class action litigation, particularly in cases under the TCPA. *See* ECF No. 22-3, ¶¶ 9-10. And GDR firmly believes that the settlement is fair, reasonable, adequate, and in the best interests of class members. *See id*. at ¶ 43.

### F. The reaction of absent settlement class members supports final approval.

"The court should also consider the reaction of the class to the settlement when, as here, notice was properly provided. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H–04–1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) (Rosenthal, J.); *In re Waste Mgmt., Inc. Sec. Litig.*, No. H–99–2183, 2002 WL 35644013, at *21 (S.D. Tex. May 10, 2002) (Harmon, J.) ("Equally supportive of approving the settlement is that no Class Member has filed an objection to any term of the settlement. By not filing objections, Class Members have tacitly indicated their approval of the proposed settlement. This lack of objection strongly suggests that the settlement is fair and should be approved.").

Here, that no settlement class member excluded himself or herself from the settlement, and that no settlement class member objected to the settlement, additionally demonstrates that the settlement is fair, reasonable, and adequate.

### G. Plaintiff and class counsel have adequately represented the settlement class.

Plaintiff was, throughout this matter, committed to acting in the best interests of settlement class members he sought to represent. He stayed updated on the case and spoke with GDR regularly. Plaintiff also remained prepared to, and did, make all necessary decisions required of

him in the best interests of settlement class members. Similarly, GDR—who is experienced in complex litigation and has served as class counsel on numerous occasions—compellingly litigated on behalf of Plaintiff and settlement class members, and against sophisticated and experienced defense counsel. And in the end, with GDR's guidance, Plaintiff obtained an excellent recovery for both himself and settlement class members.

### H. The settlement treats settlement class members equitably.

Rule 23(e)(2)(D) requires that a court confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all settlement class members have the same claims. And the settlement provides that each participating settlement class member will receive an equal portion of the settlement fund. Additionally, the release affects each settlement class member in the same way.

### III. Distribution of notice satisfied due process.

Rule 23 requires that "the court must direct to class members the best notice that is practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, No. 1:16-CV-820-RP, 2018 WL 7077069, at *1 (W.D. Tex. Oct. 22, 2018) (citing Fed. R. Civ. P. 23(c)(2)(B)). But "[d]ue process does not require actual notice or actual receipt of notice." *United States v. Robinson*, 434 F.3d 357, 366 (5th Cir. 2005).

Distribution of notice here far exceeded this minimum standard. In particular, Verita used all reasonable efforts to provide direct mail notice to each member of the settlement class. *See*

Exhibit A, ¶¶ 5-9. Additionally, Verita supplemented direct mail notice with a dedicated settlement website and toll-free telephone number. *See id.*, ¶¶ 10-11. At bottom, the notice plan amply protected settlement class members' due process rights.

## Conclusion

Plaintiff respectfully submits that the settlement constitutes an excellent result for settlement class members. And for the foregoing reasons, he respectfully requests that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties and submitted concurrently to this Court.

## Certificate of Conference

Plaintiff conferred with Defendant regarding the relief he seeks by way this motion, and Defendant does not oppose such relief.

Dated: May 6, 2025            Respectfully submitted,

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
(561) 826-5477
aradbil@gdrlawfirm.com

*Class Counsel*

11